IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GERALD MORISCH and BETTE MORISCH, | ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) CIVIL NO. 07-145-GPM ) |
| UNITED STATES OF AMERICA and ROBERT D. KREISMAN, P.C., d/b/a Kreisman Law Offices, | ) ) ) ) |
| Defendants. | ) ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

From September 8, 2009, until September 11, 2009, the claim asserted in this case by Plaintiff Gerald Morisch under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, against Defendant United States of America was tried to the Court. This Order constitutes the Court's findings of fact and conclusions of law with respect to Mr. Morisch's FTCA claim. *See* Fed. R. Civ. P. 52(a)(1); *Arpin v. United States*, 521 F.3d 769, 776-77 (7th Cir. 2008); *Ortloff v. United States*, 335 F.3d 652, 660-61 (7th Cir. 2003); *Jutzi-Johnson v. United States*, 263 F.3d 753, 758 (7th Cir. 2001).[1]

---

1. In the course of the same proceedings in which Mr. Morisch's FTCA claim was tried, the professional negligence claim asserted by Mr. Morisch and his wife, Plaintiff Bette Morisch, against Defendant Robert D. Kreisman, P.C. ("Kreisman"), d/b/a Kreisman Law Offices was tried to a jury; on September 11, 2009, the jury returned a verdict in Kreisman's favor. Also, on September 14, 2009, the Court granted the Government's motion for judgment as a matter of law on Mrs. Morisch's FTCA claim by reason of failure to exhaust administrative remedies and entered partial findings of fact and conclusions of law on that claim. *See Morisch v. United States*, Civil No. 07-145-GPM, 2009 WL 2972901, at *1, *2 (S.D. Ill. Sept. 14, 2009).

As already has been discussed in previous orders in this case, Mr. Morisch, who suffered a stroke in 2003, contends that medical personnel employed by the Veterans' Administration ("VA"), after performing a computerized axial tomography ("CT") scan of Mr. Morisch's neck, failed to take appropriate measures to determine that Mr. Morisch was on the verge of a stroke and to minimize the damage likely to result from such a stroke. *See Morisch v. United States*, Civil No. 07-145-GPM, 2009 WL 2365649, at *1 (S.D. Ill. May 6, 2009). According to the evidence offered at trial, on May 19, 2003, Mr. Morisch, who resides with his wife in Metropolis, Illinois, presented himself to the emergency room of the Marion VA Medical Center in Marion, Illinois, complaining of pain in his right jaw and neck. The emergency room physician at the Marion VA hospital prescribed pain medication to Mr. Morisch and advised him to see a dentist. On May 21, 2003, Mr. Morisch returned to the Marion VA hospital for a follow-up examination by Dr. James Richards, Mr. Morisch's primary care physician. Dr. Richards referred Mr. Morisch to an ear, nose, and throat ("ENT") specialist at the St. Louis VA Medical Center – John Cochran Division in St. Louis, Missouri. On June 16, 2003, Mr. Morisch presented to Dr. Dun Ha, an ENT specialist at the St. Louis VA hospital. During Dr. Ha's examination of Mr. Morisch, Dr. Ha noted a small mass in Mr. Morisch's right neck. Dr. Ha performed a needle biopsy of Mr. Morisch's neck and ordered a CT scan of Mr. Morisch's neck. On June 30, 2003, Dr. Gracy Thomas, a radiologist at the St. Louis VA hospital, performed a CT scan of Mr. Morisch's neck and suggested that Mr. Morisch undergo a follow-up evaluation by ultrasound. On July 13, 2003, Mr. Morisch presented himself to Massac Memorial Hospital in Metropolis; later the same day Mr. Morisch was transferred to Lourdes Hospital in Paducah, Kentucky, where he was diagnosed as suffering from a stroke.

The FTCA does not create a substantive cause of action against the Government and instead furnishes a procedural remedy whereby the Government can be held liable in tort under the law of the place where the tortious conduct occurred.  *See* 28 U.S.C. § 1346(b)(1); *Gil v. Reed*, 535 F.3d 551, 557-58 & n.2 (7th Cir. 2008); *Duffy v. United States*, 966 F.2d 307, 311-12 (7th Cir. 1992) (citing *Feres v. United States*, 340 U.S. 135, 143 (1950)); *Dulaney v. United States*, 472 F. Supp. 2d 1085, 1087 (S.D. Ill. 2006).  It appears from the recitation of facts set out above that the relevant state substantive law in this case is that of Missouri.  However, the parties have not pointed to a conflict between relevant Missouri law and relevant Illinois law that requires the Court to make a choice of law and therefore the Court will assume that Illinois furnishes the relevant state law in this case.  *See Gould v. Artisoft, Inc.*, 1 F.3d 544, 549 n.7 (7th Cir. 1993) (where the parties to a case have not identified a conflict of laws, a court need not make a choice of law); *National Ass'n of Sporting Goods Wholesalers, Inc. v. F.T.L. Mktg. Corp.*, 779 F.2d 1281, 1284-85 (7th Cir. 1985) (same); *S.C. Johnson & Son, Inc. v. Buske*, Civil No. 09-286-GPM, 2009 WL 3010833, at *9 n.6 (S.D. Ill. Sept. 17, 2009) (same).  Under Illinois law, to prove a claim of medical malpractice a plaintiff must show that:  (1) there was a standard of care by which to measure the defendant's conduct; (2) the defendant negligently breached that standard of care; and (3) the defendant's breach was the proximate cause of the plaintiff's injury.  *See Alm v. Loyola Univ. Med. Ctr.*, 866 N.E.2d 1243, 1248 (Ill. App. Ct. 2007); *Hooper v. County of Cook*, 851 N.E.2d 663, 669 (Ill. App. Ct. 2006); *Higgens v. House*, 680 N.E.2d 1089, 1092 (Ill. App. Ct. 1997).  In this instance the issue most critical to Mr. Morisch's case is a straightforward question of credibility that goes to the element of breach of the standard of care, specifically, whether or not Mrs. Morisch made telephone calls to the St. Louis VA hospital alerting medical personnel there that her husband was

experiencing transient ischemic attacks ("TIAs") prior to his stroke, calls that Mr. Morisch claims were ignored. At trial the testimony of Dr. Thomas, Dr. Terrence Riley, a neurologist who testified on behalf of the Government, and Dr. David Schreiber, a neurologist who testified on behalf of Mr. Morisch, was that nothing in the CT scan of Mr. Morisch's neck on June 30, 2003, suggested a need for emergency treatment of Mr. Morisch by the VA. Accordingly, the question of whether or not Mrs. Morisch made two telephone calls to the St. Louis VA hospital on June 16, 2003, and June 30, 2003, respectively, assumes overarching importance for Mr. Morisch's case. Before trial, Mr. and Mrs. Morisch testified that on June 16, 2003, while they were driving back to their home in Metropolis after Mr. Morisch's examination by Dr. Ha at the St. Louis VA hospital, Mr. Morisch experienced tingling and numbness in his left arm, whereupon Mrs. Morisch promptly contacted the St. Louis VA hospital via cellular telephone to alert VA personnel that her husband was undergoing TIAs. Mr. and Mrs. Morisch likewise testified before trial that on June 30, 2003, while they were driving back to Metropolis from the St. Louis VA hospital after the CT scan of Mr. Morisch's neck by Dr. Thomas, Mr. Morisch experienced numbness in his left arm and temporary blindness, whereupon Mrs. Morisch again contacted the St. Louis VA hospital via cell phone to alert VA personnel to Mr. Morisch's condition. Dr. Schreiber testified at trial via a videotaped deposition that, assuming that the cell phone calls in fact were made, the failure of the VA promptly to act on Mrs. Morisch's information was a breach of the standard of care. As Dr. Schreiber testified also, however, if the calls were not in fact made, there was no breach of the standard of care because, as noted, nothing in the CT scan of Mr. Morisch's neck suggested that Mr. Morisch required emergency treatment. Thus, the central issue here is whether or not Mrs. Morisch made the cell phone calls.

At the summary judgment stage in this case, the Government pointed out that subpoenaed records of Mrs. Morisch's cell phone calls on June 16, 2003, and June 30, 2003, did not show any calls to the VA on those dates, but conceded that the issue of whether Mrs. Morisch indeed contacted the St. Louis VA hospital on those dates regarding TIAs allegedly experienced by Mr. Morisch while returning home from the hospital was a disputed question of fact. The Court found similarly that the factual dispute about whether Mrs. Morisch made the calls at issue could not be resolved on summary judgment. *See Morisch*, 2009 WL 2365649, at *2. Unlike on summary judgment, of course, the Court is sitting as the trier of fact at this juncture and therefore is able to resolve disputed factual questions and to make determinations about the credibility of the testimony of parties and witnesses. *See Gicla v. United States*, 572 F.3d 407, 414 (7th Cir. 2009); *Wells Fargo Bank, N.A. v. Siegel*, 540 F.3d 657, 663 (7th Cir. 2008); *Kadia v. Gonzales*, 501 F.3d 817, 819-20 (7th Cir. 2007); *E.C. Styberg Eng'g Co. v. Eaton Corp.*, 492 F.3d 912, 917 (7th Cir. 2007); *Exercycle of Mich., Inc. v. Wayson*, 341 F.2d 335, 336 (7th Cir. 1965). As both Mr. Morisch and the Government stipulated at trial, Mr. and Mrs. Morisch's cell phone records for June 16, 2003, and June 30, 2003, which were introduced into evidence, are a complete record of all of the cell phone calls made by Mr. and Mrs. Morisch on June 16, 2003, and June 30, 2003, and do not reflect any cell phone calls by either Mr. Morisch or Mrs. Morisch to a telephone number maintained by the VA on those dates. With regard to Mrs. Morisch's testimony at trial that on June 16, 2003, and June 30, 2003, she in fact contacted the St. Louis VA hospital via her home telephone, possibly using a telephone calling card, and that in the period after June 30, 2003, but before July 13, 2003, when Mr. Morisch suffered his stroke, Mrs. Morisch continued to try to contact the VA regarding her husband's condition, the Court cannot credit this testimony for several reasons. First,

Mrs. Morisch's trial testimony starkly contradicts earlier testimony by Mr. and Mrs. Morisch in depositions and sworn answers to interrogatories that any telephone calls made by Mrs. Morisch to the St. Louis VA hospital on June 16, 2003, and June 30, 2003, were made using a cell phone and that Mrs. Morisch did not attempt to contact the VA regarding Mr. Morisch in the period from June 30, 2003, until July 13, 2003, when Mr. Morisch suffered his stroke.  Second, Mrs. Morisch's trial testimony makes no sense, as there would have been no reason for her to use a telephone calling card to contact the VA via her home telephone, particularly given that, as Mrs. Morisch conceded at trial, she was familiar with and had used in the past a toll-free 1-800 telephone number maintained by the VA to contact that agency; also, if Mr. Morisch was in fact experiencing TIAs prior to his stroke, it is unclear to the Court why Mr. and Mrs. Morisch would have contacted the St. Louis VA hospital about this rather than Mr. Morisch's primary care provider or perhaps an emergency room.  Finally, Mr. and Mrs. Morisch have failed to produce any records for their home telephone disclosing calls to the VA on June 16, 2003, and June 30, 2003.  In sum, the Court finds as a fact that Mrs. Morisch made no telephone calls to the St. Louis VA hospital on June 16, 2003, and June 30, 2003.  Because the Court concludes that Mrs. Morisch made no telephone calls to the St. Louis VA hospital on June 16, 2003, and June 30, 2003, then as Dr. Schreiber conceded in his testimony at trial, Mr. Morisch cannot show that VA medical personnel breached the duty of care that they owed to Mr. Morisch.[2]

---

2.   The Court notes that, in addition to the matter of the supposed phone calls, the record of this case also discloses failures of proof as to proximate causation.  At trial Dr. Riley testified that an examination of Mr. Morisch's neck could not have disclosed an imminent stroke because the situs of the stroke was inside Mr. Morisch's brain, not his neck, and that an ultrasound evaluation of the type recommended by Dr. Thomas could not have detected a blockage in Mr. Morisch's carotid artery such as would have been likely to lead to a stroke.  The Court credits Dr. Riley's testimony.

To conclude, based on the preponderance of the evidence, the Court finds that Mr. Morisch has not established that VA medical personnel deviated from the standard of care. As a consequence, Mr. Morisch is not entitled to recover under the FTCA. The Clerk of Court is directed to enter judgment in favor of the Government and against Mr. Morisch and to close the file in this case.

**IT IS SO ORDERED.**

DATED: October 15, 2009

/s/ G. Patrick Murphy
G. PATRICK MURPHY
United States District Judge